Lois Joan McGEE, Plaintiff,

v.

PUROLATOR COURIER
CORPORATION,
Defendant.

. No. CA77–H–450–S.

United States District Court,
N. D. Alabama, S. D.

May 3, 1977.

Edward Still, Judith S. Crittenden, Birmingham, Ala., for plaintiff.

Arnold E. Perl, Young & Perl, Memphis, Tenn., Larry Waites, Dinsmore & Waites, Birmingham, Ala., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HANCOCK, District Judge.

On March 15, 1977, plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination asserting that defendant, who operates

a courier business, discriminates against female employees in route assignments. On April 4, 1977, plaintiff filed this action asserting that on or about March 28, 1977, defendant retaliated against her for having filed the charge. Plaintiff's complaint endeavors to invoke this court's jurisdiction under Title VII of the Civil Rights Act of 1964 and seeks only what plaintiff characterizes as preliminary injunctive relief, requesting the court to retain the action until a "right to sue" letter is received. By order entered April 7, 1977, the court set the matter down for hearing on April 19, 1977, alerting the parties to some of the court's concern as to its jurisdiction. The hearing on April 19, 1977, was recessed until April 28, 1977, at which time that hearing concluded the receipt of evidence and both parties rested. The matter is now before the court on the pleadings, the evidence received on April 19 and 28, 1977, and the excellent briefs of the attorneys, and the court hereby enters its findings of fact and conclusions of law.

## Jurisdiction

There is no question that once the jurisdiction of this court is properly invoked an individual plaintiff in an employment discrimination action is entitled to interlocutory injunctive relief upon a proper evidentiary showing. Certainly that jurisdiction can be properly invoked in private employment discrimination suits pursuant to 42 U.S.C. § 2000e–5(f)(1) which requires prompt action after the receipt of the "right to sue" letter. Where the discrimination is alleged to be racial in nature, that jurisdiction can also be invoked under 42 U.S.C. § 1981 with its own jurisdictional grant (28 U.S.C. § 1343). But in the instant action racial discrimination is not an issue and the procedural route under § 2000e–5(f)(1) has not been followed. Instead, plaintiff has filed a complaint seeking interlocutory injunctive relief which, as addressed to the jurisdictional issue, alleges

only that "[t]his action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, et seq. Jurisdiction is vested in this Court by that statute."

The Supreme Court has stated that both the timely filing of a charge of employment discrimination *and* the receipt and timely action thereupon of the EEOC's statutory notice of the right to sue are *"the* jurisdictional prerequisites to *a* federal action" by an individual under Title VII. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973) (emphasis added); *Beverly v. Lone Star Lead Construction Corp.,* 437 F.2d 1136 (5th Cir. 1971). No right to sue letter has been issued to the plaintiff herein.

Nonetheless, relying primarily upon *Drew v. Liberty Mutual Insurance Company,* 480 F.2d 69 (5th Cir. 1973), plaintiff argues that she is entitled to bring what amounts to an action identical to that which the EEOC is specifically empowered to bring pursuant to 42 U.S.C. § 2000e–5(f)(2).[1] It is true that *Drew* contains some broad language supportive of plaintiff's view that this court has jurisdiction to entertain this action. See *Drew, supra,* at 72–73. However, several considerations militate against applying *Drew* to the present action. The first is the significant factual distinction between *Drew* and the instant action. In *Drew* jurisdiction was properly plead by an amended complaint which alleged that the EEOC had issued a "right to sue" letter. It is therefore clear that, at the time the hearing for injunctive relief was held, jurisdiction had been properly invoked under the two-pronged test enunciated in *McDonnell Douglas Corp. v. Green, supra.* Secondly, much of Judge Tuttle's rationale in *Drew* seems to be premised on the proposition that prior to the 1972 Amendments to the Civil Rights Act of 1964 an individual "had a clear right to seek equitable relief without having to await the convenience of the EEOC."[2] 480 F.2d at 73. The court has

---

1. It is clear that 42 U.S.C. § 2000e–5(f)(2) by its terms does not give an individual the right to seek injunctive relief in the extraordinary circumstances contemplated therein.

2. The established position of the Fifth Circuit prior to *Drew v. Liberty Mutual Insurance Company, supra,* appears to have been quite to the contrary. Rather than having a "clear

been cited to no case, nor can the court find a case wherein, prior to the 1972 Amendments, interlocutory relief was granted to an individual *without a right to sue letter* and jurisdiction was predicated *exclusively upon Title VII.* Indeed, *Sanders v. Dobbs Houses, Inc.,* 431 F.2d 1097 (5th Cir. 1970), which is the case relied upon by *Drew* for the granting of interlocutory relief to an individual without a right to sue letter, *was in fact a § 1981 action* where jurisdiction had been properly invoked under 28 U.S.C. § 1343. Third, although *Drew* postdated *McDonnell Douglas Corp. v. Green, supra,* by approximately one month, Judge Tuttle's opinion failed to discuss the obvious implications of *McDonnell's* jurisdiction prerequisites to an individual action for interlocutory relief solely under Title VII where those jurisdictional prerequisites had not been met. Perhaps this is because the issue was moot in *Drew* since jurisdiction was properly invoked once the "right to sue" letter was issued and the complaint amended. Finally, subsequent case law, discussed below, casts substantial doubt upon the propriety of this court having jurisdiction to entertain Mrs. McGee's action for relief, interlocutory or otherwise, at this time.

■ As noted earlier, this action was commenced on April 4, 1977, *less than 30 days after the initial EEOC charge was filed by the plaintiff on March 15, 1977.*[3] With the exception of a suit brought specifically under 42 U.S.C. § 2000e–5(f)(2), even the EEOC could not have initiated a suit within the first 30 days after the charge was filed. See 42 U.S.C. § 2000e–5(f)(1). The 1972 Amendments have been correctly interpreted to bar private actions for a period of 180 days after the EEOC charge is

right" without "await[ing] the convenience of the EEOC," a plaintiff in an individual Title VII action first had to allow the EEOC the opportunity to act on the charge. Simply put, "the administrative remedies available from the EEOC must be 'exhausted' in the traditional sense of the term, as a prerequisite to federal suit." *Beverly v. Lone Star Lead Construction Corp.,* 437 F.2d 1136, 1139 (5th Cir. 1971). This is not to say that the EEOC *had* to act or that a finding of probable cause by the EEOC was a prerequisite to suit—such is clearly not the case—but rather that the statutory scheme established in Title VII requires that the EEOC at least be given the *opportunity* to act. *McDonnell Douglas Corp. v. Green, supra; Beverly v. Lone Star Lead Construction Corp., supra; Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 161 (5th Cir. 1971); *Gamble v. Birmingham Southern Railroad Co.,* 514 F.2d 678, 688 (5th Cir. 1975); *United States v. Allegheny-Ludlum Industries, Inc.,* 517 F.2d 826, 868–69 (5th Cir. 1975).

The exhaustion requirement is both entirely consonant with *McDonnell Douglas'* position that receiving and acting upon a "right to sue" letter is a jurisdictional prerequisite and a well established principle of the Fifth Circuit, as well as other circuits. See, *Beverly v. Lone Star Lead Construction Corp., supra; Caldwell v. National Brewing Co.,* 443 F.2d 1044 (5th Cir. 1971); *Gibson v. Kroger Company,* 506 F.2d 647 (7th Cir. 1974), *cert. denied,* 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975); *cf. Beale v. Blount,* 461 F.2d 1133 (5th Cir. 1972). The language in the *per curiam* decision in *Parks v. Dunlop,* 517 F.2d 785 (5th Cir. 1975), that *Drew* stands for the proposition that exhaustion is not required in private sector Title VII actions and therefore should not be required of public sector employees is simply an overstatement of both the law and the facts upon which *Drew* arose. *Drew,* on its facts as discussed previously, cannot stand for the proposition that there is no exhaustion requirement, for in *Drew* there was exhaustion in the sense of allowing the EEOC opportunity to act. Ms. Drew had received the "right to sue" letter. More important, the settled status of the law on exhaustion in individual Title VII actions at the time of the *Drew* decision absolutely and unequivocally required an aggrieved party to exhaust the available administrative remedies before a district court had *any* jurisdiction under Title VII. See *Beverly v. Lone Star Lead Construction Corp., supra* at 1139; *Caldwell v. National Brewing Co., supra; McDonnell Douglas Corp. v. Green, supra.* Accordingly, this court concludes that the *per curiam* opinion in *Parks v. Dunlop,* predicated upon an erroneous construction of *Drew* or standing alone as articulating a proposition of law, does not accurately reflect the position of the Fifth Circuit that exhaustion of administrative remedies is required as a prerequisite to the filing of *any* individual action predicated upon Title VII.

3. There is no evidence that plaintiff has as yet filed a charge with EEOC for the retaliation which allegedly occurred on March 28, 1977, and which is the gravamen of her current charges in this action. It is noted that the original hearing herein on April 19, 1977, and the continued hearing on April 28, 1977, were both within the 30 day period following the alleged retaliatory conduct.

filed. *Equal Employment Opportunity Commission v. Louisville & Nashville Railroad,* 505 F.2d 610, 615 (5th Cir. 1974). Further, while there exist cases specifically denying a jurisdictional basis for an action such as that brought by the plaintiff herein,[4] the court has found no authority, except for *Parks v. Dunlop, supra,* discussed in footnote 2 above, for the proposition that a jurisdictional basis exists for any kind of an individual action *exclusively* under Title VII *prior* to the receipt of a "right to sue" letter. In all other cases which have been brought to the court's attention to support the plaintiff's contention, the jurisdiction of the court had *in fact* been properly invoked. *Drew v. Liberty Mutual Insurance Company,* 480 F.2d 69 (5th Cir. 1973) (right to sue letter issued); *Murry v. American Standard, Inc.,* 488 F.2d 529 (5th Cir. 1973) (right to sue letter issued)[5]; *Culpepper v. Reynolds Metals Company,* 421 F.2d 888 (5th Cir. 1970) (right to sue letter issued). Finally, recent decisions in other circuits have expressed doubt as to the propriety and jurisdictional basis of an action such as that brought by the plaintiff herein. *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 225–26 (1st Cir. 1976); *Berg v. Richmond Unified School District,* 528 F.2d 1208, 1211–13 (9th Cir. 1975).

Therefore, because Mrs. McGee has neither received a right to sue letter nor demonstrated an independent basis for jurisdiction for this action, the court concludes that it is without jurisdiction to hear this action and that this action should be dismissed for want of jurisdiction.

### Merits

Prior to the commencement of the hearing on April 19, 1977, the court pointed out its serious concern for its apparent lack of jurisdiction. The court nevertheless proceeded to receive evidence addressed to the issuance *vel non* of the requested interlocutory relief. Having considered all the evidence offered by the parties on April 19 and 28, 1977, the court further concludes that plaintiff has failed to establish a factual basis for the requested interlocutory relief even if the court had jurisdiction of this action.

In order to establish her right to interlocutory injunctive relief, plaintiff at least has to show either

(1) a violation in fact of a right given to plaintiff by a statute, *United States v. Hayes International Corporation,* 415 F.2d 1038 (5th Cir. 1976),[6] *or*

(2) the traditional four prerequisites to the grant of such relief, including principally a substantial likelihood of success on the merits and the existence of irreparable injury. *Morgan v. Fletcher,* 518 F.2d 236 (5th Cir. 1975).

It should be emphasized that plaintiff does not predicate her request for injunctive relief on events occurring prior to March 24, 1977 (it is undisputed that on March 15, 1977, she filed with the EEOC an initial charge of discrimination by defendant and that the charge was served on defendant on March 24, 1977). Plaintiff asserts that the actions of defendant on March 24, 1977, and thereafter, most significantly on March 28, 1977, were in retaliation for the filing of the March 15, 1977 charge and hence constituted an unlawful employment practice under 42 U.S.C. § 2000e–3(a). Were the events occurring between March 24 and March 28 in any way motivated by or associated with the charge of discrimination theretofore filed by plaintiff, then she

---

**4.** See *Troy v. Shell Oil Company,* 378 F.Supp. 1042 (E.D.Mich.1974), *appeal dismissed as moot,* 519 F.2d 403 (6th Cir. 1975); *Collins v. Southwestern Bell Telephone Company,* 376 F.Supp. 979 (E.D.Okl.1974).

**5.** The reported decision does not reflect this fact but the record in the lower court shows that the right to sue letter had issued.

**6.** Whether this is a single test or is simply a substitute for the irreparable injury element of the four element test is immaterial to the decisions herein made. A failure to establish the traditional element of substantial likelihood of success would necessarily embody a finding of no violation in fact, but the reverse would not be true.

would be correct. But the only credible evidence offered to show the requisite connection with the original charge was the inference which could be drawn from the fact that the March 28, 1977 meeting was called on March 24, 1977, the very day defendant was served with the original charge. All other evidence militates against any connection between the original charge and the March 28, 1977 meeting. Defendant's business generally was falling off and defendant in late December of 1976 had told all employees that some would be laid off; defendant had quite recently lost First Alabama Bank as a customer, which was the most significant customer on plaintiff's route; plaintiff and other couriers were, because of a low volume of business, working significantly fewer hours per week than the 40 hours for which they were paid; a short time prior to the filing of plaintiff's initial charge with the EEOC, defendant's local office had been instructed to eliminate full time routes which could be handled as part time routes; at the meeting on March 28, 1977, plaintiff and five others (Clyde Arnold, Kathy Morgan, Joe Leon, Donald Wakefield and Betty Childs) were advised that three full time routes (those currently held by Arnold, Morgan and plaintiff) were being discontinued; the full time routes selected for discontinuance were the only three full time routes which required less than 32 hours to run (32 hours being the established dividing line between a full time route and a part time route); and the method utilized to determine which employees would be retained followed the defendant's normal practice. Under this normal practice, the most senior employee whose full time route is being discontinued has the option of (a) replacing the most junior employee holding a full time route being retained or (b) being laid off. Thus, Mr. Arnold, possessing the most seniority, was given the opportunity to take the full time route held by Mr. Wakefield, the most junior employee holding a full time route being retained. Mr. Arnold refused the route and thus was laid off. Had Mr. Arnold accepted Mr. Wakefield's job, plaintiff, possessing the next most seniority, would have had the option of (a) replacing Mr. Leon, the second most junior employee holding a full time route being retained or (b) being laid off. But since Mr. Arnold, unanticipated by defendant, selected the option of lay-off, plaintiff was offered the same option as Mr. Arnold. She, like Mr. Arnold, selected the option of lay-off.

As viewed by plaintiff, Mr. Wakefield's route was unacceptable since it necessitated a move out of town and plaintiff has endeavored to show that, as the act of retaliation, she was required by defendant to choose between that route and being laid off. But this argument is without merit. She was only confronted with this choice as a direct consequence of Mr. Arnold's decision. If Mr. Arnold had chosen Mr. Wakefield's route rather than being laid off, plaintiff would have had the option of selecting Mr. Leon's route (which, though an Atlanta route, was Birmingham based and would not require a change of residence), or being laid off. It is clear that the decision to eliminate three full time routes and the method of selecting those three routes were unrelated to plaintiff's charge of discrimination. Likewise, there is no evidence from which the court can properly find that the utilization of the customary method of selecting the three employees to be retained was in any way related to plaintiff's charge of discrimination. In this regard, it may be important to note that after Mr. Arnold made his choice, and after plaintiff made her choice (to be laid off rather than take Mr. Wakefield's job) which was triggered by Mr. Arnold's decision, defendant offered plaintiff an alternative to being laid off, i. e., continued part time employment in Birmingham which would not require an out-of-town move by plaintiff. Plaintiff declined the offer. In short, the facts do not demonstrate even the slightest likelihood of plaintiff being successful on the merits of her claim that defendant's action between March 24, 1977 and March 28, 1977, were related in any way to her March 15, 1977 charge of discrimination. As a corollary to this finding, it is clear that plaintiff has failed to establish a violation in fact of a

right given to her by statute. Accordingly, had the court not reached the decision that it lacks jurisdiction to hear this matter, the court necessarily would have denied the interlocutory relief which plaintiff herein seeks.

### Order to be Entered

For the reasons stated under the heading Jurisdiction, an appropriate order will be entered dismissing this action for want of jurisdiction.